Chief Judge Gregory, may it please the court. I am here on behalf of the appellant. My name is Sonia Allen. We are asking this court to vacate and remand the revocation sentence that was imposed for the reason that it is plainly and procedurally unreasonable. Mr. Gibbs, at his revocation hearing, admitted to the violations. After admitting to the violations, Mr. Gibbs asked, Mr. Gibbs counsel presented mitigating factors and non-frivolous arguments to the court, the district court, asking for a sentence lower than the statutory maximum, which was 24 months and which was also the guideline for Mr. Gibbs. When she requested this sentence, she asked specifically for a 12-month sentence. She asked for 12 months while the stat max was 24 months. And she presented, number one, that Mr. Gibbs would suffer extreme family hardship if, in fact, he were sentenced to 24 months. She went into the fact that his children were very young and that their mother was deceased. She also went into the fact that he was able to earn a good living. He had the ability to build a house from the ground up. Defense counsel stated that he could frame a house, that he could paint a house, that he could do landscaping, and that he had, in fact, worked in that field. She even presented to the court two employers. And she presented evidence that Mr. Gibbs had the ability and could, in fact, earn a good living. She talked about the hardship it created with the defendant's mother moving to the city to try to help out with the children. She asked the court not to impose a 24-maximum month. Do you think the court considered all of that? Your Honor, the court failed to acknowledge any consideration of that. Well, it says, you know, it's fairly extensive. And we are on a revocation, as you know. But it goes down and lists 1, 2, 3, 4, 9 factors that led to its conclusion. And it included he had scant employment record and little in the way of marketable job skills. And then when the request was made to consider the family condition, the circumstance, he took a pause and thought about it. And he says, I'm not going to make any change. Now, it sounds to me like everything was before the court. And the court didn't say the nine factors outweigh mercy to the family. But that's basically what it concluded. He says, I'm not going to make a change in view of that argument. You want us to go back and have him say the nine factors outweigh the hardship to the family? Your Honor. Is that your request? It is not the request. I mean, we know exactly where the court was based on what he said. And so the real question is, what do you want the judge to say more? What would you like him to add to what he said? The court had a duty to explain the sentence. I want you to tell me what he would. I don't want to tell what duties. He has a duty to explain the sentence, no question. But the question is, what would you have him on remand say more about the justification for his sentence? It's within a guideline range. He has broad discretion. It's presumptively reasonable. And he explained the job skills and that other stuff with respect to the family hardship. He thought about it explicitly. It was brought to his light after he gave those reasons. And he paused. And then he says, I'm not going to make a change in light of that. Now, you want him to say what? I want the court to say, and we believe Mr. Gibbs would want the court to say, I have heard your plea. I understand you are concerned about your children. I have heard your argument. It is a non-frivolous argument. However, I reject your argument because. What? Because it's outweighed by the other factors, the nine factors the court listed. That may be what the judge would have said, but we don't know because the judge did not give an explanation at all. Silence is not an explanation. And that was all the judge did in response to her request of reconsideration. After the silence, while he was thinking about it, he then said, I'm not going to make a change. So it's clear he considered it. And it's clear he gave the reasons for the sentence. And it was a within guidelines sentence. I think if it was an outside guidelines sentence, I think he has to say more, don't you? Your Honor, whether it is in the guideline or outside the guideline, the judge has to explain the sentence and why he has rejected non-frivolous arguments. And the district court did not do that. He spent two pages in the transcript explaining. He explained absolutely nothing as it relates to the family hardship argument. Not one word. Defense counsel went on to talk about Mr. Gibbs's ability to earn a living. The court did address that completely contrary way to what was presented. The evidence presented in the proceeding was that he had, for lack of better term, above average or almost extraordinary skills. The average builder, it was presented that he could do more than just hammer a nail. He could actually frame a home. He could paint a house by any evidence presented by the government. When the court imposed its sentence, it was in direct contrast, completely contrary to the only evidence presented, which would indicate that the judge did not consider the information that was presented, the evidence that was presented. And it's further indication that this sentence is plainly and procedurally unreasonable. Gibbs's counsel spoke of not only the family hardship and his ability to earn money. She also talked about the fact that he had already served 14 months in the North Carolina Department of Corrections. She asked the court to consider a 12 months in the Bureau of Prisons as, in fact, 12 full months, that he would do every bit of that time. Again, the judge was silent about that non-frivolous argument. No explanation. You know, this is not in a vacuum. The courts pointed out in March of 2013, drug possession, paraphernalia. In January 2050, felony conspiracy to traffic in opium, heroin, and maintain a vehicle or dwelling place for controlled substances. In September 2050, conspiracy to sell heroin. In February 2013 and the 1st, tested positive for marijuana. The defendant has a history of gang affiliation and prior convictions for, and then he listed about 10 convictions. And this is all on supervised release. And the question is, and he gave a within guidelines sentence. Again, Your Honor. And so you think that was, he abused his discretion in not giving you 12 months instead of 24 months. Your Honor, the district court had an obligation. When the district court gives the defendant an opportunity to speak and to present the things that are in the past, in the slappy case, or no, I'm sorry, in the blue case, that that is the defendant's only opportunity to present mitigating factors. Almost everything else is already decided. The guidelines, the criminal history, the criminal history points, what charges will be dismissed. What is the point in giving a defendant an opportunity to ask for a lower sentence and to provide argument if the court is not going to consider it? If the court considers it, then the court is supposed to consider it and should make a record that would allow this court meaningful review of the reasons that he chose the sentence he chose. This court did not do that. The non-frivolous arguments were not addressed, with the of all of the evidence that was presented regarding Mr. Gibbs's employment history. The fact that the judge recounted Mr. Gibbs's criminal history does not relieve the court of the obligation of explaining why he rejected the non-frivolous arguments of the defendant. For that reason, we contend that the sentence was plainly and procedurally unreasonable and should be vacated. And that violated our published opinions, correct? That is correct, Your Honor. Yeah, this panel is bound by it, correct? That is correct, Your Honor. Thank you. If this court has any questions, further questions, I'll be happy to answer them. Well, if there are no further questions, I've reserved some time for rebuttal. Thank you, Ms. Allen. Thank you. Mr. Pender? May it please the Court, Don Pender for the United States. Very excited to be here today to discuss this issue. I've been before the court on a very similar issue before and it did not go the way that I hoped it would go in that case. But nonetheless, I do feel that my focus has been sharpened a little bit and I hope today to raise some things that will at least give you something to think about as you come to what I'm sure will be a very well-reasoned conclusion. To start, the defendant argues, or the defense rather, argues in their brief and seems to argue here that the sentence is plainly unreasonable because of a procedural error. And I would just start by saying that is not the full analysis. That is a merging of two prongs. The first prong is whether it's procedurally or substantively unreasonable. And then the second prong, once you determine that, if you determine that the answer is yes, then the second prong is, is it plainly unreasonable? And what the defense has not done and what I contend the defense cannot do is explain how a sentence that is within, not only within the guidelines, because it's at 24 months, but again, as Judge Niemeyer said, is presumptively reasonable. And further, while the defense focuses on the fact that it's a statutory matter. I thought you were going to lay the order out in a correct form. But apparently, you don't have it quite done well. It's first whether or not there's a procedural problem. If there's a procedural unreasonableness, then you don't even get to whether the sentence is reasonable or not. Absolutely. Okay, let's get in the right order. Well, I What the argument is and what the record clearly shows is that the law requires that you look at and address non-frivolous mitigating factors as to the sentencing. And in this case, I found it quite, and Judge Niemeyer read the language that Plaintiff says that I find that he has very little skills or something like that. I don't know how many people that I know can build a house from the ground up. That was undisputed. He can actually build a house. How could you conclude with that undisputed evidence that he has fertile skills and employability? I mean, my goodness, I see people building houses around. I mean, that's an incredible skill. How do you not address the issue of the hardship of his children, their deceased mother? It's not about what do we want them to say. We want to do what the law does, address them. I mean, I'd love to hear the answer to that, how you conclude that a person who can build a house from the ground up has very little skills or employability. That would be interesting. I'd like to hear. That's what I'm talking about. That gives it meaningful review. And we can say, oh, I can see how you come to that. That, you know, for example, nobody's building a house in that city at all. Therefore, even though you can build a house for this reason, but this is not a difficult case. It's not at all in terms of what our law says. It's just not addressed. They're just not addressed. Go ahead, Mr. Pender. Where exactly would you like me to start? Because I think I can respond to everything you said. But where would you like me to start? Start with the one that there are no marketable skills. OK, so the no marketable skills you mentioned in what you just said as to whether or not these skills are marketable. You mentioned things like seeing people building. There's no engagement in conversation. Answer the question or either present your legal argument. Well, the question, well, the answer to that question is in the full context of this case. Context meaning not only what's in the record, but the interrelated conditions that cause this to take place. When you look at the full context of this. What did you say? Interrelated conditions. That is the definition of context. It's out of the case. This defendant had named a single job where he's built anything. He hasn't. He listed two jobs. He said he worked at a chicken plant. He said he's done landscaping for seven days. And the brief misstates that is seven days per week. The district court was not told that was seven days per week. The district court was told that was seven days. What did the evidence come in that he could skill to build a house? There wasn't any evidence to build the house other than him saying it. And that is precisely my point. If I came to you and told you, Judge Gregory, I took a program some years ago and I can build you a five-bedroom house right now for $50,000 if you'll just write me the check. Would you write me that check? I know that's rhetorical, but go on. No reasonable person would. Because you would want to know more. You would want to know things like, well, how many houses have you built, Mr. Pender? Do you have licensing? Have you ever even done the job before? He hasn't done any of those things. He presented no evidence that he's done any of those things. He only named two jobs. And he had an opportunity to come in and say, well, Your Honor, you know, I'd like for you to reconsider. I've been building houses for years. He hadn't built anything except for a very long criminal record. That's the only thing that's here. You know, sometimes, Mr. Pender, when someone is there before someone to sentence to determine how long they're going to stay in prison, sometimes they're the only witness to their life's journey. Sometimes it doesn't have to be a criminal record. Sometimes it has to do with their balls, assertions solely saying, this is the evidence of my journey. So you're saying because he's the only one that's saying, the court didn't say, well, only you said that, that's the whole idea to respond to it. I mean, that's what you engaged in. You engaged in. But the court did respond. What we're really talking about here is the fact that we don't like the way the court responded. The court responded. The court said they were a little in the way of marketable skills and scant employment. That is a response. The only question is essentially whether that response was reasonable. And I'm saying it was for those reasons. He listed two jobs, one that he worked for some unknown duration of time, another one that he says he worked for seven days, neither of which have anything to do with building anything. And so from that perspective, I think the court's response was reasonable. Now, we can agree or disagree with it. I may not personally like and think that that's not a marketable skill. But that's not quite the point. The point is, with what the court was given, it was reasonable for the court to respond as it did. So we can't come in here and say, even if we're just looking at what's on the record, something was said in response to that. We're talking about it as if nothing was said. And I don't think that's a fair way of looking at it in terms of what the district court did do. What about his children? Which particular? The issue in terms of hardship, family. Well, and that takes me a little bit into my legal point, which is that I have to keep in mind, in an original sentence, you would be focusing on the severity of conduct. In a revocation sentence, you would be focusing on a breach of trust. Now, if we accept, and I think we all would accept that to mitigate means to make less, the things that would be a mitigating or meritorious argument in an original sentence would not necessarily be a meritorious argument in a revocation sentence where you're focused on a breach of trust. So you mentioned his children. You mentioned the hardship and the emotional things that they had been through. I would submit that that actually makes this breach of trust more egregious. And I say that because, first of all, if you look at the timeline, his oldest child was born before he went to prison, and the second child is his. My question was how did the judge address it, not whether Mr. Pender, you are now, if you're the judge, determining what you would have done. I'm asking, how does this record demonstrate that the judge reviewed that mitigation? Because you're saying the only thing is mitigation. Matter of fact, it works against him. That's fair enough, Judge. But I'm talking about this judge and this record. Where does it show that he addressed that? Well, if that's, if you're saying that's fair enough, then I think that kind of makes more argument for me, because if it's not a mitigating argument. If I were to ask you a question, what did the judge say about it? The judge didn't say anything about his family situation in particular with the children, but I think you've also got to consider, you know, we've got to put ourselves in the shoes of the district court here. It appears that his children were actually there. Do we really want it burned into their brains as they're seeing their dad already going to prison? They've seen that before, but as they're seeing him already going to prison. They now have it burned in their brain that this judge has sat behind the bench and told them how horrible a parent he is. And so I think we have to take that into account as well. There wasn't much that could be said to that. And so that's why I've boiled down the question to, was that actually a mitigating argument? And the question is, was that a mitigating argument? The answer to that question is no. He should have been more responsible given that he had children. He owed them better than this. Nonetheless, he's out conspiring to traffic 200 bags of heroin. It's not as if this is and he says he has marketable skills. Explain to me how, if you have marketable skills in which you could work a job, you could make money legitimately, then the question becomes, why are you trafficking heroin   And the answer to that question is no. He should have been more These are things that the district court knew. That is part of the context. Now, if you boil context down to simply being the words on the page, well, then at that point we can replace judges with robots and just have them spout out words that respond to the words that I say. Ideally, a judge should be taking into account his life experiences. He should be taking into account the things he knows. He should be taking into account the things that the defense has not argued. It's not the judge's job to read defense counsel's mind. The law won't do for you what you won't do for yourself. You said that. And so I think we have to consider that fact as well. If it's not a mitigating argument, there's not case law that says the court has to respond to it. It seems that we have applied almost a presumption-like approach to what makes an argument non-frivolous. If it doesn't mitigate a breach of trust, I don't know how you can say in a case like this, it's a mitigation as to what sentence to give as to... Well, right. But you have to consider why they're sentencing. And that's my point. Sentencing the severity of the conduct versus sentencing the fact that you breached the court's trust, those are two different reasonings for why you apply the sentence. At this point... The point of the mitigation aspect is this. Yes, I have this record. I've done these things. But there's collateral damage involved. There's collateral damage. That's the mitigation. And I'd like you... And judges do it every day in courts all over the country. They look and say, I know what you've done, but when I see the consequences to your family because of those, I am going to reduce the sentence. And many times they don't. But it's still a mitigating factor and it's non-frivolous. That's the point. And obviously, Mr. Fender, you eloquently state your position and I've heard your position before about matters like this in terms of sentencing. And that's fine. But the point is our precedent says you have to address those things. But the precedent, and this is what I'm getting to, and this is win or lose, agree with me or not agree with me. I would love for you to agree with me. But even if you don't, I think there does need to be some discussion, maybe in an in-depth discussion, of the fact that you're looking at different things in a revocation sentence. Again, that breach of trust versus the severity of conduct. And what exactly would make an argument such that the court needs to respond to it? Because I think that as it stands, if you just say it needs to be non-frivolous, if you just say it needs to have merit, if you just say those things, it's not going to work. Then with respect to the breach of trust, these arguments don't fit. And I think it's particularly, his other two arguments, it's particularly true. I mean, if you look at his argument that he should have gotten somewhat of a credit for the state sentence, if you look at, and it's actually found on page 514 of the guidelines, and if you go through, the Sentencing Commission talks about sort of its theory and how it formulated and why it approaches revocation sentences the way it does. And if you go back and look at the very bottom of page 514, it actually says specifically that the commission's intent is that the punishment for the breach of trust be imposed consecutive to whatever the sentence giving for the actual, by the actual court that had jurisdiction over the criminal conduct. And so, again, those are things we need to consider. This is not even something that the court should have considered in this context. And I think further, again, if you speak to the cooperation, I think, frankly, the theory is sort of the same. The reason that the commission said that was because it didn't want duplicitous efforts between the court sentencing the criminal conduct and between the court applying the revocation sentence. And so the court applying the criminal conduct, that it has jurisdiction over the criminal conduct, may give some credit for the cooperation. But in a  way that the court should apply credit for. Especially considering that, again, with respect to the breach of trust, the court has trusted you and has imposed certain conditions upon you to transition out of this lifestyle, yet you still have intimate knowledge in this case of things like murders and robberies that the investigating officers don't even know. That shows us not only are you still in this lifestyle, but you've got both feet still in this lifestyle. You know things the police don't even know. And so those things, you have to say they aren't appropriate here. The district court, with respect to what it did consider, it didn't consider anything that was inappropriate. It recognized that there were certain things, certain places that it shouldn't go, and it didn't go there. For example, it didn't focus on the fact that he trafficked 200 bags of heroin. And finally, and I think this is something that isn't brought out in the brief, and frankly, and I apologize, I didn't bring it out as much as I should have. But as defense focuses on this is the statutory maximum, this is the statutory maximum. Keep something in mind. Not only is that within the guidelines range, but without that statutory maximum, and you can go to 7B1.4 and do the math yourself, without that statutory maximum, his range is actually higher. It's 33 to 41 months. This is a grade A violation. He's got a criminal history category 6. He does better. He comes out better because of that statutory maximum. And yet, yet he's here arguing to cut that in half. And so in light of all those things, Your Honor, and I've got a little time if you guys have got any more questions. Well, I'm going to take that as my cue to sit on down and ask, and before I do that, I would ask that you do affirm the district court. Thank you. Thank you, Mr. Pender. Ms. Allen, you have some time reserved. Thank you, Your Honor. If Mr. Pender had been the judge, clearly things would have gone differently. But what we're focused on today is what the district court did in Mr. Gibbs' case, and that was not Mr. Pender. First, I'd like to respond to the question of presumption of reasonableness. A presumption of reasonableness does not apply to procedural reasonableness, and that is the focus of our error that we are asking the court to find. With regard to the marketable skills, Mr. Pender had many questions regarding Mr. Gibbs' marketable skills. Well, those were questions that the district court could have asked had he considered the non-frivolous argument. What we do know is that what was presented was not contradicted. He did, in fact, attend a program called YouthBuild, and he was a skilled laborer. A similar situation happened and was before this court in an unpublished opinion, U.S. v. Towns, and in that case, the court, in the Towns case, defense counsel presented that Mr. Towns had not used illegal drugs. And yet, when he was revoked and the court actually ordered that Mr. Towns should undergo intensive drug treatment, which is very similar to what we have here in this case where Judge Fox said the exact opposite of what was presented to him in court with regard to Mr. Gibbs' ability to build a home from the ground up. In that case, this court Well, you know, you've spent a lot of emphasis on that. I don't know if it's true that the court has never heard of a YouthBuild program where that's what they learned. He has never done it, and he never went out to market himself, and it basically said he could frame a house and he could do the landscaping. He worked seven days as a landscaper, and so the court concludes that those are not very impressive skills. He's never built a house. He's never framed a house. He worked seven days at landscaping. The conclusion the court raised was clearly reflective of what the record showed. Your Honor, I do not believe the evidence reflects that he had never built a house or that he did not have any skills. He was in HomeBuild where that's what he learned. It's like saying I went to school and I learned how to build a nuclear bomb. I mean, I haven't built one, and I don't know how to build one, really. I read a textbook, but that's what he went to HomeBuild, YouthBuild, and learned how to do those things. But he had two jobs. He worked at the chicken plant. He did the landscaping. Your Honor, I believe it would be reasonable to assume that if someone is being taught how to build a home, they are, in fact, using that time to do exactly that. It looks like I am about out of time. I would ask again, Your Honor, we are asking that this Court vacate the sentence imposed because it is procedurally and plainly unreasonable. Again, thank you for your time. Thank you, counsel. We'll come down, greet counsel, and proceed to the next case.
judges: Roger L. Gregory, Paul V. Niemeyer, G. Steven Agee